UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TRUSTEES OF THE LOCAL UNION 531 IBEW AND NECA MONEY PURCHASE PENSION PLAN, TRUSTEES OF LOCAL UNION 531 IBEW AND NECA PENSION FUND, <br><br>　　Plaintiffs, <br><br>　　v. <br><br>NUCORE ELECTRIC INC, <br><br>　　Defendant. | Case No. 3:22-CV-444 JD |

**OPINION AND ORDER**

The Court now considers a Motion for Entry of Default Judgment brought by Plaintiffs Trustees of the Local Union 531, I.B.E.W. and N.E.C.A. Pension Fund and the Trustees of the Local Union 531, I.B.E.W. and N.E.C.A. Money Purchase Pension Plan (collectively, "the Plaintiffs"). Plaintiffs seek a default judgment against Defendant Nucore Electric Inc. ("Nucore"). Given the discussion below, the Court DENIES, with leave to refile, Plaintiffs' motion for a default judgment. (DE 8.)

**A.   Background**

Plaintiffs, according to the Complaint, are trustees of two funds: (1) the Local Union 531, I.B.E.W. and N.E.C.A. Pension Fund ("the Pension Fund"), which is an "employee pension benefit plan" as defined by the Employee Retirement Income Security Act of 1974 (ERISA) and is organized for the sole purpose of providing defined-benefit pensions to certain eligible employees; and (2) the Local Union 531, I.B.E.W. and N.E.C.A. Money Purchase Pension Plan ("MPP Plan"), which is an "employee pension benefit plan" as defined by ERISA and is

organized for the purpose of providing retirement benefits to eligible employees. (DE 1 ¶¶ 6, 9.)[1] Both the MPP and the Pension Fund are "multiemployer plans" within the meaning of ERISA. *See* 29 U.S.C. § 1002 (explaining that a "multiemployer plan" is a plan in which "more than one employer is required to contribute," which is "maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer," and which satisfies other regulatory requirements). Nucore is an employer bound by the terms of the collective bargaining agreement (CBA) between the Northern Indiana Chapter NECA, Inc. and Local Union 531, IBEW. (*Id.* ¶ 13.) As a party to the CBA, Nucore was also bound to the terms of the Pension and MPP Trust Agreements, including a Joint Collection Policy. (*Id.* ¶¶ 21–23.) Pursuant to the CBA, Pension Trust Agreements, and the Joint Collection Policy, Nucore was required to submit timely reports of hours paid to covered employees and to make contributions to the Pension and MPP Plans, as well as other employee benefit funds. (*Id.* ¶¶ 14, 23.) Contrary to these obligations, Nucore did not report all hours paid to covered employees and failed to timely remit all contribution payments for work performed by covered employees for the period of January 1, 2017, to December 31, 2019 ("the Audit Period"). (*Id.* ¶ 15.)

The Plaintiffs filed a Complaint on June 9, 2022, which alleges four causes of action: (1) Failure to Remit Contributions (ERISA § 515, 29 U.S.C. § 1145); (2) Breach of Contract & Failure to Remit Contributions/Reports (LMRA § 301, 29 U.S.C. § 185); (3) Failure to Pay Liquidated Damages, Interest and Audit Costs (ERISA § 515, 29 U.S.C. § 1145); and (4) Breach of Contract & Failure to Pay Liquidated Damages, Interest and Audit Costs (LMRA § 301, 29 U.S.C. § 185). In their Complaint, Plaintiffs requested damages in the following amounts:

---

[1] The Court refers to the Pension Fund and the MPP Plan collectively as "the Funds."

- unpaid and delinquent contributions from the Audit Period in the amount of $6,193.16;
- liquidated damages in the amount of $1,238.63;
- accumulated interest through the date of judgment at the rate of 1% per month for late and/or unpaid contributions from the due date of such contributions;
- audit costs in the amount of $1,000;
- any unpaid contributions accruing during the pendency of this action; and
- reasonable attorney's fees.

(*Id.* at 11.)

Examination of the court files and record in this cause show that Nucore was properly served the complaint and summons by way of certified mail on June 13, 2022. (DE 5 at 3 (showing that an agent of Nucore signed upon delivery of the certified mail).) Under Rule 4(e), an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P 4(e)(1). Indiana allows for service of an organization via certified mail if the certified mail is "sent to 'an executive officer [or] an agent appointed or deemed by law to have been appointed to receive service' and that a written receipt be produced showing who accepted the certified mail." *Johnson , next friend of C.C. v. Hotel Mgmt. Servs. Inc.*, No. 3:21-CV-62 JD, 2021 WL 5177593, at *1 (N.D. Ind. Nov. 8, 2021) (quoting T.R. 4.6(A)(1)). Here, a receipt was submitted to the Court showing that an agent of Nucore signed upon delivery. (DE 5 at 3.) Service was therefore effective. *See* Fed. R. Civ. P. 4(e)(1) (permitting service pursuant to the law of the state in which the district court is located); Ind. R. Civ. P. 4.1(1) (permitting service upon an individual by registered or certified mail). Ind. R. Civ. P. 4.6 (permitting service on an organization by certified mail to the registered agent).

After service was perfected, Nucore failed to plead, otherwise appear in this action, or respond to the complaint as required by Fed. R. Civ. P. 12(a)(1)(A). On July 11, 2022, Plaintiffs

filed an application for entry of default pursuant to Fed. R. Civ. P. 55(a). (DE 6.) The clerk entered a default against Nucore on July 12, 2022. (DE 7.) Nucore has continuously failed to file an answer or any other responsive pleading and have not sought to set aside the default. As a result, Plaintiffs filed the instant motion for default judgment. (DE 8.)[2]

**B.    Legal Standard**

Federal Rule of Civil Procedure 55 governs the entry of defaults and default judgments. *See Lowe v. McGraw-Hill Cos., Inc.*, 361 F.3d 335, 339 (7th Cir. 2004). Prior to obtaining a default judgment under Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a). *See Wolf Lake Terminals, Inc. v. Mat. Marine Ins. Co.*, 433 F. Supp. 2d 933, 941 (N.D. Ind. 2005). In the instant case, the clerk has already made the entry of default. (DE 7.)

Accordingly, the Court may now enter a default judgment under Rule 55(b)(2). However, the Court must exercise its discretion in doing so. *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993). A default judgment is justified when "the defaulting party has exhibited a willful refusal to litigate the case properly," as evinced by "a party's continuing disregard for the procedures of the court" and a "willful choice not to exercise even a minimal level of diligence." *Davis v. Hutchins*, 321 F.3d 641, 646 (7th Cir. 2003). In the present case, the Defendant has "exhibited a willful refusal to litigate the case properly," based upon his "continuing disregard" and failure to "exercise even a minimum level of diligence." *Id*. Proper service has not prompted Nucore to plead, appear, or otherwise respond. (DE 5 (indicating that Nucore Electric Inc. was served on June 13, 2022).) Additionally, Defendant is a business and

---

[2] The Court notes that the motion for default judgment did not include a certificate of service, however, no service is required on a party who has failed to enter an appearance. Fed. R. Civ. P. 5(a)(2).

4

thus not an infant, incapacitated, or in the military. *See, e.g.*, *UMG Recordings, Inc. v. Stewart*, 461 F. Supp. 2d 837, 841 (S.D. Ill. 2006) (listing requirements that a party seeking default judgment must establish before being able to proceed) Thus, the entry of default is not based on a simple technicality, and there is no apparent reason why the Court should not proceed to considering a default judgment in favor of the Plaintiff.

"The basic effect of an entry of default (step one) is that '[u]pon default, the well-pleaded allegations of a complaint relating to liability are taken as true.'" *VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). Even though the Court accepts the well-pleaded allegations of a complaint relating to liability as true, it still must inquire into whether those well-pleaded allegations state a prima facie case as to liability. *See Heartland Footwear Sales Inc. v. 8215774 Canada, Inc.*, No. 3:19 CV 1142-PPS-MGG, 2021 WL 1732078, at *2 (N.D. Ind. May 3, 2021) ("[A]n entry of default judgment is only appropriate if the allegations, along with other evidence submitted, establish a cognizable claim for relief."); *Franko v. All About Travel Inc.*, No. 2:09-CV-233 JVB, 2014 WL 2803987, at *1 (N.D. Ind. June 19, 2014) ("Default judgment is appropriate only if the well-pleaded allegations of the complaint are sufficient to establish a legal claim."); *Ford Motor Credit Co. LLC v. Fincannon Ford, Inc.*, No. 1:19-CV-502-HAB, 2020 WL 6336209, at *1 (N.D. Ind. Oct. 29, 2020) (first determining whether "the well-pleaded facts establish liability" prior to turning to damages).

Once liability is determined, the "plaintiff still must establish his entitlement to the relief he seeks." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true. The district court must instead conduct an inquiry in

order to ascertain the amount of damages with reasonable certainty." *Id.* As a result, when considering a motion for default judgment, a court often must hold a hearing to determine damages. *O'Brien*, 998 F.2d at 1404. But if the damages are "capable of ascertainment from definitive figures contained in documentary evidence or detailed affidavits," such a hearing is unnecessary. *Id*.

**C.     Discussion**

*(1) Liability*

The Court first addresses liability as to Count 1 and Count 2. In Count 1, Plaintiffs allege that Nucore is liable for failing to remit contributions under ERISA § 515. "The Multiemployer Pension Plan Amendments Act ("MPPAA"), Pub.L. 96-364, 94. Stat. 1208 (Sept. 26, 1980), imposes liability on employers who withdraw from multiemployer plans governed by ERISA." *Midwest Operating Engineers v. Dredge*, 147 F. Supp. 3d 724, 741 (N.D. Ill. 2015). Under Section 515 of ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Fiduciaries of the plan are authorized to bring suit under section 1132(a), which allows a fiduciary to seek relief for violations of section 1145.

The elements required to show that Defendants are liable under Count 2, which seeks liability for violating section 301 of the Taft-Hartley Act (also known as the Labor Management Relations Act (LMRA), are co-extensive with Count 1. Under section 301 of the Taft-Hartley Act, "the breach of a contract between a union and an employer" is actionable. *Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 667 (7th Cir. 2007). Because the breach alleged by

6

Plaintiffs is the failure to make contributions to the Funds as required under the CBA, the elements of this claim are essentially identical to those required in Count 1. *See NECA-IBEW Pension Tr. Fund v. Bays Elec., Inc.*, 894 F. Supp. 2d 1071, 1083 (C.D. Ill. 2012) (explaining that "since the breach of a contract between a union and an employer is actionable under section 301 [of the Taft-Hartley Act], 29 U.S.C. § 185(a), Plaintiffs can base their claim on this section as well as ERISA"). If Plaintiffs' Complaint sufficiently alleges that Nucore was a party to the CBA, that, pursuant to the CBA, signatory employers are required to make monthly contributions to the funds of which Plaintiffs are trustees, and that Nucore was delinquent in contributing to those funds, then liability under both Count 1 and Count 2 is sufficiently established. *See Trustees of Indiana State Council of Roofers Health & Welfare Fund v. Ed Rutherford Roofing, Inc.*, (N.D. Ind. Feb. 3, 2020) (explaining that Plaintiffs provided sufficient evidence to show a violation of 29 U.S.C. § 1145 as to each of the required elements).

Here, the allegations by the Plaintiffs are sufficient to establish liability as to Count 1 and Count 2. First, Plaintiffs allege that they are the trustee of the Pension Fund and the trustee of the MPP Plan. Next, Plaintiffs allege that Nucore was a party to and agreed to abide by the terms of the CBA. (DE 1 ¶¶ 20, 30.) Plaintiffs further allege that Nucore was required to make contributions to the Funds under the terms of the CBA. (*Id.* ¶¶ 21, 31.) Additionally, the CBA attached as an exhibit indicates that Employers were required to make contributions to the Pension Fund and the MPP plan. (DE 1-5 at 24.) Plaintiffs also allege that, pursuant to the CBA, Nucore was required to submit accurate monthly reports of hours paid to covered employees and to remit full and correct contribution payments. (DE 1 ¶¶ 23, 33.) These reports were to be submitted by the 15th day of the month following the month in which work was performed and that, if payments were not made by this due date, they were delinquent. (*Id.* ¶¶ 24, 34.) Finally,

Plaintiffs adequately allege that Nucore breached the CBA by failing to report all hours paid to covered employees and failing to remit all contribution payments due for the period of January 1, 2017, to December 31, 2019 ("the Audit Period"). (*Id.* ¶¶ 15, 25, 35.)

Given that Plaintiffs alleged that they were the trustees of the funds in question, that Nucore was a party to the CBA, that Nucore had certain obligations under the CBA, and that Nucore breached these obligations, the Court finds that Plaintiffs' allegations in their Complaint are sufficient to support liability as to Count 1 and Count 2. The Court notes that Count III and Count IV indicate that Plaintiffs are seeking liquidated damages, interest, and audit costs. Rather than being an independent source of liability, whether Plaintiffs are entitled to those damages will be considered below when the Court addresses whether Plaintiffs have provided adequate evidence to support the remedies they seek.

### *(2) Remedy*

Even though the Court has determined that the allegations are sufficient to support liability, Plaintiffs still must prove damages. In some circumstances, this necessitates a hearing to determine damages. *O'Brien*, 998 F.2d 1404 (explaining that "[before the entry of default judgment, Fed. R. Civ. P. 55(b)(2) provides for the district court, 'as it deems necessary and proper,' to conduct an evidentiary proceeding to determine the proper amount of damages"). However, this proceeding is not required if "the amount claimed is liquidated or capable of ascertainment from definite figures contained in documentary evidence or detailed affidavits." *Id.*

While the Court finds that a hearing is not yet necessary, Plaintiffs have failed to submit sufficient evidence and affidavits to support the remedy they seek. Plaintiffs seek damages totaling $14,197.58. (DE 9 at 5.) This total can be broken down into six categories of damages:

- Unpaid Contributions — $6,193.16
- Liquidated Damages (20%) — $1,238.63
- Interest on Unpaid Contributions (1% per month from 2/1/8 through 7/1/22) — $3,282.29
- Audit Costs — $1,000.00
- Attorney's Fees — $2,083.50
- Costs — $400.00

(*Id.*) These categories align with the categories of damages permitted under 29 U.S.C. § 1132 (explaining that in an ERISA action brought by a fiduciary where there is a "judgment in favor of the plan . . . the court shall award the plan (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action . . . [and] (E) such other legal or equitable relief as the court deems appropriate").

The first category of damages ("Unpaid Contributions") is supported by the declaration of Michelle L. Zimmerman, who is a partner at L.M. Henderson & Company LLP and a certified public accountant. (DE 9-1 ¶ 1.) In her declaration, Ms. Zimmerman explains that L.M. Henderson conducted a payroll compliance audit of the records of Nucore for the period of January 1, 2017 through December 31, 2019 (the "Audit Period"). (DE 9-1 ¶ 3.) This audit, according to Ms. Zimmerman, revealed that Nucore owed $3,304.16 in unpaid contributions to the Pension Fund and owed $2,889.00 to the MPP Plan. This amount totals the $6,193.16 that Plaintiffs now seek in unpaid contributions. Because Plaintiffs have provided a declaration

9

clearly laying out the amount of damages owed in support of their first category of damages, the Court finds that this first category of damages is adequately supported.[3]

The second category of damages ("Liquidated Damages") is supported by the CBA and the Joint Collection Policy submitted as exhibits. Under 29 U.S.C. § 1132, this Court must award "liquidated damages provided for *under the plan* in amount not in excess of 20 percent." *See Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1156 (7th Cir. 1989) ("Awards of liquidated damages are 'mandatory in an action in which judgment in favor of the plan is awarded.'"); *see also* 29 U.S.C. § 1002 (explaining that *the plan*, in this context, refers to the "fund . . . established or maintained by an employer or by an employee . . . to the extent that by its express terms or as a result of surrounding circumstances such . . . fund 'provides retirement income to employees' or 'deferral of income' by employees for periods extending to the termination of covered employment or beyond"). Here, the plan required the award of liquidated damages in the amount of 20%, as shown by the Joint Collection Policies adopted by the Trustees of the Funds. (Joint Collection Policy & Procedures, DE 1-3 at 2 ("liquidated damages assessment shall [be] 20% of any contributions that remain unpaid after the 27th day of the month in which they were due").) Because the amount of unpaid contributions is $6,193.16, the amount of liquidated damages totals $1,238.63 (i.e., 20% of $6,193.16). Since this is in line with the amount Plaintiffs seek, the Court finds that these damages are adequately support.

However, as to the third category of damages ("interest on unpaid contributions—1% per month from 2/1/18 through 7/1/22"), Plaintiffs do not provide adequate support. The plan

---

[3] The Court notes that Ms. Zimmerman's declaration indicates that there is a "copy of the Payroll Audit Discrepancy Detail attached as Exhibit 1." (DE 9-1 ¶ 4.) This exhibit was not submitted to the Court. Because Plaintiffs are being given leave to refile, they should submit this exhibit in a future filing to provide further support for these amounts.

specifies that, in the event of legal action, the employer would be liable for the payment of interest in the amount of "one percent per month on the unpaid contributions." (Joint Collection Policy & Procedures, DE 1-3 at 2.) Here, Plaintiffs propose interest in the amount $1,751.12 ($33.04 x 53) on the Pension Fund and $1,531.17 ($28.99 x 53) on the MMP Plan. (DE 9 at 3–4.) However, Plaintiffs fail to explain how they come to these numbers or why they calculated the interest from February 1, 2018, through July 1, 2022, as opposed to beginning on January 1, 2017, the beginning of the audit period. Without any explanation for why they made these assumptions, the Court finds that the damages proposed for interest are not yet supported.

As to the fourth category of damages ("Audit Costs"), Plaintiffs include the declaration of Ms. Zimmerman in support. Ms. Zimmerman declared that the fee for "the payroll auditing services provided was $1,000." (DE 8-1 ¶ 5.) The Court finds that this declaration, by the accountant who helped perform the audit, sufficiently supports the damages sought for this fourth category of damages.

As to the fifth and sixth categories of damages ("attorney fees" and "costs"), Plaintiffs have not provided adequate support for the damages they seek. While Plaintiffs' counsel, in a declaration, indicates the hourly rate is $250 for partner attorneys, $225 per hour for associate attorneys, and $115 per hour for paralegals, counsel fails to provide the Court with any evidence showing how many hours they worked in this matter. The Seventh Circuit has advised that a "reasonable fee" can be calculated using the "lodestar" method, which is the "product of an attorney's reasonable hourly rate and the number of hours reasonably expended." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004). Without Plaintiffs providing evidence regarding how many hours the attorneys worked, this Court cannot determine if the fee is reasonable. *Spegon v. Cath. Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999) ("The most useful starting

point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."). Furthermore, Plaintiffs must indicate the nature of the tasks performed and who performed those tasks (i.e., whether the work was being performed by an attorney or a paralegal). Other courts have denied similarly sparse requests for attorneys' fees. *Craftline Graphics, Inc. v. Total Press Sales & Serv., LLC*, No. 1:17-CV-462-TLS, 2018 WL 1811590, at *2 (N.D. Ind. Apr. 17, 2018) (denying motion for default judgment in part because the attorney only attorney cited his hourly rate and those of associates, but failed to provide other information).

**D.     Conclusion**

Given the deficiencies mentioned above, the Court DENIES the motion for default judgment without prejudice and with leave to refile. (DE 8.) Plaintiffs are advised to submit further evidence regarding attorneys' fees and their interest calculations if they file another motion for default judgment. Plaintiffs should also attach the exhibit that Ms. Zimmerman references in her declaration.

SO ORDERED.

ENTERED: January 27, 2023

/s/ JON E. DEGUILIO
Chief Judge
United States District Court