UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TRUSTEES OF THE LOCAL UNION 531 IBEW AND NECA MONEY PURCHASE PENSION PLAN, TRUSTEES OF LOCAL UNION 531 IBEW AND NECA PENSION FUND, <br><br> Plaintiffs, <br><br> v. <br><br> NUCORE ELECTRIC INC, <br><br> Defendant. | Case No. 3:22-CV-444 JD |

**OPINION AND ORDER**

The Court now considers an Amended Motion for Entry of Default Judgment brought by Plaintiffs Trustees of the Local Union 531, I.B.E.W. and N.E.C.A. Pension Fund and the Trustees of the Local Union 531, I.B.E.W. and N.E.C.A. Money Purchase Pension Plan (collectively, "the Plaintiffs"). Plaintiffs seek a default judgment against Defendant Nucore Electric Inc. ("Nucore"). For the reasons stated below, the Court does not grant or deny Plaintiffs motion, but requests a supplemental filing as to one area of damages.

**A.   Background**

The facts of this case were discussed in detail in this Court's prior order, but the Court will review them briefly. (DE 10.) Plaintiffs are the trustees of two employee pension benefit plans as defined by the Employee Retirement Income Security Act of 1974 (ERISA). Plaintiffs allege that Nucore violated the terms of a collective bargaining agreement (CBA) by failing to submit timely reports of hours paid to covered employees and to make contributions to the employee pension benefit plans, as well as other employee benefit funds.

The Plaintiffs filed a Complaint on June 9, 2022, which alleges four causes of action: (1) Failure to Remit Contributions (ERISA § 515, 29 U.S.C. § 1145); (2) Breach of Contract & Failure to Remit Contributions/Reports (LMRA § 301, 29 U.S.C. § 185); (3) Failure to Pay Liquidated Damages, Interest and Audit Costs (ERISA § 515, 29 U.S.C. § 1145); and (4) Breach of Contract & Failure to Pay Liquidated Damages, Interest and Audit Costs (LMRA § 301, 29 U.S.C. § 185). In their Complaint, Plaintiffs requested damages in the following amounts:

- unpaid and delinquent contributions from the Audit Period in the amount of $6,193.16;
- liquidated damages in the amount of $1,238.63;
- accumulated interest through the date of judgment at the rate of 1% per month for late and/or unpaid contributions from the due date of such contributions;
- audit costs in the amount of $1,000;
- any unpaid contributions accruing during the pendency of this action; and
- reasonable attorney's fees.

(*Id.* at 11.)

As the Court explained in its prior order, Nucore was properly served. (DE 10 at 3.) Despite proper service, Nucore failed to plead, otherwise appear, or respond to the complaint, resulting in the clerk's entry of default against Nucore on July 12, 2022. (DE 7.) Plaintiffs then filed a motion for default judgment. (DE 8.)

On January 27, 2023, this Court issued an order explaining that the well-pleaded facts alleged in the Complaint were sufficient to support liability. (DE 10 at 6–8.) However, even once liability is determined, the "plaintiff still must establish his entitlement to the relief he seeks." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). In its prior order, the Court held that the Plaintiffs did not establish entitlement to the relief they sought for certain categories of damages, but gave the Plaintiffs leave to refile. (*Id.*) In line with this order, Plaintiffs then filed an amended motion for default judgment, which the Court now considers. (DE 11.)

2

**B.     Legal Standard**

Federal Rule of Civil Procedure 55 governs the entry of defaults and default judgments. *See Lowe v. McGraw-Hill Cos., Inc.*, 361 F.3d 335, 339 (7th Cir. 2004). Prior to obtaining a default judgment under Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a). *See Wolf Lake Terminals, Inc. v. Mat. Marine Ins. Co.*, 433 F. Supp. 2d 933, 941 (N.D. Ind. 2005). In the instant case, the clerk has already made the entry of default. (DE 7.)

Accordingly, the Court may now enter a default judgment under Rule 55(b)(2). However, the Court must exercise its discretion in doing so. *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993). A default judgment is justified when "the defaulting party has exhibited a willful refusal to litigate the case properly," as evinced by "a party's continuing disregard for the procedures of the court" and a "willful choice not to exercise even a minimal level of diligence." *Davis v. Hutchins*, 321 F.3d 641, 646 (7th Cir. 2003).

"The basic effect of an entry of default (step one) is that '[u]pon default, the well-pleaded allegations of a complaint relating to liability are taken as true.'" *VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). Even though the Court accepts the well-pleaded allegations of a complaint relating to liability as true, it still must inquire into whether those well-pleaded allegations state a prima facie case as to liability. *See Heartland Footwear Sales Inc. v. 8215774 Canada, Inc.*, No. 3:19 CV 1142-PPS-MGG, 2021 WL 1732078, at *2 (N.D. Ind. May 3, 2021). This Court's prior order addressed this first step and held that Plaintiffs' complaint made a prima facie case as to liability.

Once liability is determined, the "plaintiff still must establish his entitlement to the relief he seeks." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). "Even when a default judgment is

3

warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* As a result, when considering a motion for default judgment, a court often must hold a hearing to determine damages. *O'Brien*, 998 F.2d at 1404. But if the damages are "capable of ascertainment from definitive figures contained in documentary evidence or detailed affidavits," such a hearing is unnecessary. *Id.* The Court now examines whether Plaintiffs have adequately established damages.

**C.      Discussion**

Even though the Court's prior order determined that the Complaint's allegations are sufficient to support liability, Plaintiffs still must prove damages. In some circumstances, this necessitates a hearing to determine damages. *O'Brien*, 998 F.2d 1404 (explaining that "[before the entry of default judgment, Fed. R. Civ. P. 55(b)(2) provides for the district court, 'as it deems necessary and proper,' to conduct an evidentiary proceeding to determine the proper amount of damages"). However, this proceeding is not required if "the amount claimed is liquidated or capable of ascertainment from definite figures contained in documentary evidence or detailed affidavits." *Id.*

Plaintiffs have failed to provide sufficient evidence and affidavits to support the remedy they seek. Plaintiffs seek damages totaling $15,374.25. (DE 12 at 5.) This total can be broken down into six categories of damages:

- Unpaid Contributions — $6,193.16
- Liquidated Damages (20%) — $1,238.63
- Interest on Unpaid Contributions (1% per month from 1/1/2017 through 1/30/2023) — $4,458.96
- Audit Costs — $1,000.00

4

- Attorney's Fees — $2,083.50
- Costs — $400.00

(*Id.*) These categories align with the categories of damages permitted under 29 U.S.C. § 1132 (explaining that in an ERISA action brought by a fiduciary where there is a "judgment in favor of the plan . . . the court shall award the plan (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action . . . [and] (E) such other legal or equitable relief as the court deems appropriate").

The first category of damages ("Unpaid Contributions") is supported by the declaration of Michelle L. Zimmerman, who is a partner at L.M. Henderson & Company LLP and a certified public accountant. (DE 9-1 ¶ 1.) In her declaration, Ms. Zimmerman explains that L.M. Henderson conducted a payroll compliance audit of the records of Nucore for the period of January 1, 2017 through December 31, 2019 (the "Audit Period"). (DE 9-1 ¶ 3.) This audit, according to Ms. Zimmerman, revealed that Nucore owed $3,304.16 in unpaid contributions to the Pension Fund and owed $2,889.00 to the MPP Plan. This amount totals the $6,193.16 that Plaintiffs now seek in unpaid contributions. In support of this, Plaintiffs also include an exhibit showing a chart entitled "Payroll Audit Discrepancy Detail." (DE 12-1 at 5.) Because Plaintiffs have provided a declaration and exhibit clearly laying out the amount of damages owed in support of their first category of damages, the Court finds that this first category of damages is adequately supported.

The second category of damages ("Liquidated Damages") is supported by the CBA and the Joint Collection Policy submitted as exhibits. Under 29 U.S.C. § 1132, this Court must award

"liquidated damages provided for *under the plan* in amount not in excess of 20 percent." *See Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1156 (7th Cir. 1989) ("Awards of liquidated damages are 'mandatory in an action in which judgment in favor of the plan is awarded.'"); *see also* 29 U.S.C. § 1002 (explaining that *the plan*, in this context, refers to the "fund . . . established or maintained by an employer or by an employee . . . to the extent that by its express terms or as a result of surrounding circumstances such . . . fund 'provides retirement income to employees' or 'deferral of income' by employees for periods extending to the termination of covered employment or beyond"). Here, the plan required the award of liquidated damages in the amount of 20%, as shown by the Joint Collection Policies adopted by the Trustees of the Funds. (Joint Collection Policy & Procedures, DE 1-3 at 2 ("liquidated damages assessment shall [be] 20% of any contributions that remain unpaid after the 27th day of the month in which they were due").) Because the amount of unpaid contributions is $6,193.16, the amount of liquidated damages totals $1,238.63 (i.e., 20% of $6,193.16). Since this is in line with the amount Plaintiffs seek, the Court finds that these damages are adequately support.

However, the third category of damages is only partially supported. Plaintiffs seek "interest on unpaid contributions—1% per month from 1/1/2017 through 1/30/2023". Unlike their prior motion, Plaintiffs now make it clear that the delinquent contributions only occurred during year 2017. (DE 12-1 at 5 (audit report showing unpaid contributions accrued through 12/31/2017).) The plan specifies that, in the event of legal action, the employer would be liable for the payment of interest in the amount of "one percent per month on the unpaid contributions." (Joint Collection Policy & Procedures, DE 1-3 at 2.) Plaintiffs propose interest in the amount $2,378.88 ($33.04 x 72) on the Pension Fund and $2,080.08 ($28.89 x 72) on the

MPP Plan.[1] (DE 12 at 3–4.) This calculation is from January 1, 2017, through January 30, 2023. (*Id.*) However, Plaintiffs do not include sufficient information in support to warrant an award of interest during the year of 2017. The chart that Plaintiffs provide only indicates that the delinquent contributions existed as of December 31, 2017, and does not indicate when in that year these contributions became delinquent.[2] Awarding interest from January 1, 2017, without any evidence to support that there were delinquent contributions accruing on that date would be improper. However, because they have presented evidence showing that the delinquent contributions occurred by December 31, 2017, Plaintiffs have presented sufficient evidence to support an award of interest from February 1, 2018, through February 28, 2023, which is approximately a 60-month time frame. Accordingly, there is only sufficient evidence to support interest in the amount of $1,982.4 ($33.04 x 60) on the Pension Fund and $1,733.4 ($28.89 x 60) on the MPP plan. The Court will allow Defendants to supplement their motion with a filing indicating whether they agree or disagree with this calculation. If they do agree, then total interest in the amount of $3,715.8 would be adequately supported.

As to the fourth category of damages ("Audit Costs"), Plaintiffs include the declaration of Ms. Zimmerman in support. Ms. Zimmerman declared that the fee for "the payroll auditing services provided was $1,000." (DE 8-1 ¶ 5.) The Court finds that this declaration, by the

---

[1] The monthly damages for interest are calculated by multiplying the contributions owed per plan at the end of 2017 (i.e., for the pension fund, $3,304.16) by the one percent interest rate (0.01), which comes to $33.04 of interest per month for the pension fund. For the MPP plan, the contributions owed at the end of 2017 were $2,889.00, which, when multiplied by 0.01 results in interest of $28.89 per month.

[2] A chart concerning the audit, entitled "Payroll Audit Discrepancy Detail," now shows that, by the end of 2017, the total contributions owed for the pension plan was $3,304.16 for the pension plan and $2,889.00 for the MPP plan. (DE 12-1 at 5.) This is helpful information which clarifies the damages requested, in line with this Court's previous order. However, the chart does not show *when* these contributions became due during 2017. In other words, it does not provide enough information to show that interest began to accrue during the year of 2017 itself. Therefore, the Court begins its calculations starting from February 2018, given that interest accrued on a monthly basis.

accountant who helped perform the audit, sufficiently supports the damages sought for this fourth category of damages.

As to the fifth and sixth categories of damages ("attorney fees" and "costs"), Plaintiffs have now provided adequate support for the damages they seek. Plaintiffs request attorneys' fees in the amount of $2,083.50 and costs in the amount of $400.00. The Seventh Circuit has advised that a "reasonable fee" can be calculated using the "lodestar" method, which is the "product of an attorney's reasonable hourly rate and the number of hours reasonably expended." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004). Here, Plaintiffs include an affidavit from Mr. Sawyer Lehman, a counsel for the Plaintiffs, which specifies that he calculated the attorneys' fees by using the hourly rates of $250 for partner attorneys, $225 per hour for associate attorneys, and $115 per hour for paralegals. (DE 12-2.) Mr. Sawyer also provides a chart detailing the hours worked on the case, who performed the work, and the nature of the work. (*Id.* at 4.) Courts have approved similar rates previously. *Firestine v. Parkview Health Sys.*, Inc., 374 F. Supp. 2d 658, 663 (N.D. Ind. 2005) (approving rate of $225.00 an hour under the lodestar method); *Greenfield Mills, Inc. v. Carter*, 569 F. Supp. 2d 737, 756 (N.D. Ind. 2008) (approving of hourly rate of $347.50, $330, and $165 for various attorneys). In the affidavit, Mr. Sawyer also explains that the $400.00 Plaintiffs seek to recover is the filing fee. (DE 12-2 at 2.) Given the experience of the attorneys, and the result of this case, the Court finds that the attorney fees and costs requested are reasonable and supported by the evidence.

Accordingly, the Court proposes entering a judgment as to the following amounts:

- Unpaid Contributions — $6,193.16
- Liquidated Damages (20%) — $1,238.63
- Interest on Unpaid Contributions (1% per month from 2/1/2018 through 2/28/2023) — $3,715.8
- Audit Costs — $1,000.00
- Attorney's Fees — $2,083.50

- Costs — $400.00

The total amount of the judgment entered would be for $14,631.09.

**D.      Conclusion**

Because the Court included a different calculation as to the interest rate on the unpaid contributions, the Court DIRECTS the Plaintiffs to make a filing indicating whether they agree as to the damages for the interest on unpaid contributions proposed in the order. Such a filing should be made by March 17, 2023. If the Plaintiffs indicate they agree, the Court will order the Clerk to enter judgment accordingly.

SO ORDERED.

ENTERED: March 3, 2023

                                          /s/ JON E. DEGUILIO
                                          Chief Judge
                                          United States District Court